96 F.3d 1450
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Marrion LOGAN, Plaintiff-Appellant,
v.
John GILLAM, Defendant-Appellee.
 No. 94-3794.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 29, 1996.*
Decided Aug. 30, 1996.
 
 Before CUMMINGS, PELL and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Marrion Logan, an inmate at the Dixon Correctional Center, is an African-American who practices Judaism. He brought this lawsuit under 42 U.S.C. § 1983 alleging that he was fired from his prison job and, when he was rehired, denied credit for his previous work time (1) because of his race and (2) because he refused to work on Saturdays, the Jewish sabbath. Following a bench trial, the magistrate judge found that Logan had failed to prove either racial or religious discrimination. Logan appeals.
 
 I. Background
 
 2
 In 1986, Logan obtained a work assignment at the Prison Industries ("Industries") eyeglass laboratory at Dixon. His work consisted of cutting eyeglass lenses to fit frames. When he began his job at Industries, Logan (like all the other inmate-employees) was required to work Monday through Friday.
 
 
 3
 In June 1987, John Gillam, the Industries Superintendent, instituted a new work schedule. To improve efficiency, Industries adopted a seven-day work week. Each inmate-worker was still required to work five days per week, but those five days could include weekends as well as weekdays. Gillam testified that his plan for a seven-day work week was unpopular among the inmates.
 
 
 4
 Logan testified that, following the announcement of the new plan, he told Gillam that his religion prevented him from working on Saturdays. According to Logan, Gillam laughed at him and said that "there was no such organized religion as a black Jew." Gillam denied making any such comment.
 
 
 5
 The new work schedule was instituted in July 1987. July 4, which fell on a Saturday, was a holiday, and Industries was closed on that day. Logan was scheduled to work on Sunday, July 5, but he did not show up for work. His religious beliefs did not prevent him from working on Sundays. Gillam testified that there was an attempt to contact Logan to inform him that he was scheduled to work. Logan testified that he was not contacted.
 
 
 6
 When Logan showed up for work on Monday, July 6, Gillam fired him. At trial, Gillam stated that he fired Logan because he believed that Logan had attempted to defy the new work schedule by not showing up on Sunday, July 5. Gillam also fired the only other inmate (a hispanic inmate named Diaz) who failed to show up for work on July 5.
 
 
 7
 After performing other work assignments for a year, Logan reapplied to Industries in July 1988. He was not rehired at that time, and instead his name was placed on a waiting list. In May 1990, Logan's name came to the top of the waiting list, and Gillam rehired him.
 
 
 8
 Inmates who work at Industries receive different pay rates based on their experience and their performance. A new Industries worker begins at the 60% pay rate (this means that an inmate receives credit for 60% of the hours that he works). When he was fired in 1987, Logan had progressed to the 73% pay rate. When he was rehired in 1990, however, Logan was once again required to start at the 60% pay rate. Industries has a written rehire policy under which inmates who are rehired receive credit for their previous time worked. Gillam testified, however, that this rehire policy does not apply to inmates who are taken from the waiting list rather than rehired immediately. In response to Gillam's testimony that a "waiting list exception" to the rehire policy existed, Logan presented evidence that of the approximately 60 inmates that Gillam had previously fired and rehired, Logan was the only one who returned at a lower pay rate than he had been receiving when he was fired.
 
 
 9
 Logan and Gillam consented to a bench trial before Magistrate Judge Mahoney. At trial, Logan argued that Gillam fired him and failed to give him credit for his previous service upon rehiring him because of his race and religion. Logan also claimed that prison regulations granted him a property interest in receiving credit for his previous time worked. After hearing the evidence, the magistrate judge ruled in favor of Gillam on all of the claims. Logan appeals.
 
 II. Standard of Review
 
 10
 When the verdict in a civil bench trial is challenged on appeal, we review questions of law de novo and factual determinations for clear error. Eyler v. Commissioner of Internal Revenue, 88 F.3d 445, 448 (7th Cir.1996). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 III. Racial and Religious Discrimination
 
 11
 Prisoners are protected from "invidious discrimination based on race," Wolff v McDonnell, 418 U.S. 539, 556 (1974), and prison officials may not unreasonably interfere with an inmate's free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Alston v. DeBruyn, 13 F.3d 1036, 1039 (7th Cir.1994). Logan argues that Gillam's comment that there is "no such organized religion as a black Jew" demonstrates that Gillam's motivations for firing him and rehiring him at only the 60% rate were his race and religion. The magistrate judge found that Gillam's actions were not motivated by Logan's race or religion. In addition, the magistrate judge noted that Logan was not asked to work on Saturday, so he has no argument that Gillam failed to make reasonable efforts to accommodate his religious beliefs.[1]
 
 
 12
 The magistrate judge's findings are not clearly erroneous. Although Gillam's comment (if he indeed made it) may be evidence of discrimination, a rational trier of fact could certainly conclude that Gillam's actions were not motivated by racism or anti-semitism. The new seven-day work week was unpopular with the inmates, and Gillam may have believed that Logan skipped work on July 5 in an attempt to defy the new work schedule. This conclusion is strengthened by the fact that Gillam fired both workers (Logan and Diaz, who was neither black nor Jewish) who failed to report for work on July 5. In addition, the trier of fact could reasonably conclude that even if Gillam disregarded prison policy by reinstating Logan at the 60% rather than the 73% pay rate, this was intended as retribution for Logan's defiance of the new work schedule rather than as racial or religious discrimination. Thus, we may not disturb the magistrate judge's conclusion that Logan was not the victim of racial or religious discrimination.[2] Finally, there is no evidence in the record that Gillam ever required Logan to work on Saturdays. Therefore, Logan may not claim that Gillam failed to reasonably accommodate his religious beliefs.
 
 IV. Property Interest
 
 13
 Logan contends that the rehire policy granted him a property interest in returning to work at the 73% pay rate when he was rehired by Industries in 1990. Logan, however, was not immediately reassigned when he reapplied to Industries (he came up through the waiting list), and it is not clear from the record whether the "waiting list exception" to the rehire policy was properly applied to him.[3] The magistrate judge did not make a factual finding on this question and instead held that the rehire policy did not create a federally-enforceable property interest.
 
 
 14
 In Sandin v. Conner, 115 S.Ct. 2293 (1995), the Supreme Court held that prison regulations will create federally-enforceable interests in limited situations only. The Sandin Court stated that a prison regulation may create a federally-enforceable liberty interest only if the regulation grants inmates "freedom from restraint" and shields them from an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. at 2300. Although Sandin involved a claim that a regulation created a liberty interest, its analysis also applies to claims that prison regulation create federally-enforceable property interests. See Abdul-Wadood v. Nathan, Nos. 96-1074, 96-1296 & 96-1527, slip op. at 3 (7th Cir. Aug. 2, 1996). The regulation requiring workers rehired by Industries to receive their previous pay rate does not protect inmates from an "atypical and significant hardship." Thus, Logan had no federally-enforceable property interest in receiving the 73% pay rate.
 
 V. Conclusion
 
 15
 The magistrate judge did not commit clear error by finding that Logan was not the victim of racial or religious discrimination, and the rehire policy does not create a federally-enforceable property interest. Thus, the judgment in favor of Gillam is
 
 
 16
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Logan argues that Title VII applies to this case because he had an employer-employee relationship with Industries. Under Title VII, an employer must reasonably accommodate the religious beliefs and practices of employees unless the employer would suffer undue hardship. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1977). We have not decided the question of whether Title VII applies in the prison employment context. See Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir.1996) (noting circuit split). Because we agree with the magistrate judge that Gillam did not fail to reasonably accommodate Logan's religious beliefs, see infra, it is not necessary to decide whether Title VII applies in the prison employment context
 
 
 [2]
 Logan's claim of discriminatory discharge also appears to be barred by the statute of limitations. Illinois prisoners are subject to a two-year statute of limitations for bringing § 1983 actions. See Wilson v. Garcia, 471 U.S. 261, 275-79 (1985); Farrell v. McDonough, 966 F.2d 279, 282 (7th Cir.1992), cert. denied, 506 U.S. 1084 (1993). Logan was fired in July 1987, and he did not file his complaint until August 14, 1992. It does not appear from the record before us that Logan is entitled to any tolling of the statute of limitations, at least with regard to his claim concerning the 1987 discharge
 
 
 [3]
 This question is really one of the credibility of the witnesses: Gillam testified that the "waiting list exception" existed, and Logan contested this assertion by noting that in every previous case where a prisoner was rehired by Industries, the inmate received credit for his past service