2010 WY 52

**Louis D. COSCO, Appellant (Plaintiff),**

**v.**

**Robert O. LAMPERT, Director, Wyoming Department of Corrections; Eddie Wilson, Warden, Wyoming State Penitentiary; Wyoming Department of Corrections, Agency of Wyoming; and State of Wyoming; Appellees (Defendants).**

No. S–09–0106.

Supreme Court of Wyoming.

April 26, 2010.

present here. *See Presler v. Michigan Dep't of Corrections,* 129 F.3d 1265 (6th Cir.1997).

Representing Appellant: Louis D. Cosco, Pro se.

Representing Appellees: Bruce A. Salzburg, Wyoming Attorney General; and John W. Renneisen, Deputy Attorney General.

Before VOIGT, C.J., and HILL, KITE, and BURKE, JJ., and PRICE II, D.J.

HILL, Justice.

[¶ 1] Appellant, Louis D. Cosco (Cosco), seeks review of an order of the district court that resolved the two civil actions he filed in that court, in favor of the Appellees. Cosco named several parties as Defendants/Appellees (as shown in the caption) but we will refer to them collectively as the Wyoming Department of Corrections (DOC). We will affirm. As a part of our affirmance we will direct that Cosco may not file any additional claims, which are related in any manner to the subjects of this appeal, in any State court without first obtaining the express permission of this Court to submit any such pleadings to that State court.

## ISSUES

[¶ 2] Cosco states his issues as follows:

1. Does W.S. 25–1–105(a)[1] violate the constitutions (for due process and equal protection)?

2. Do the laws and constitutions of the State of Wyoming violate the due process and equal protection clauses of both constitutions?

3. Do laws that prevent prisoners from suing prison officials violate the consti-

tution for due process, equal protection and right to petition for redress of grievances?

The DOC rephrases the issues in a manner consistent with the civil actions resolved by the district court, as well as in a manner which comes as close as possible to making sense of the contentions advanced by Cosco in his appellate brief:

1. Did Cosco properly file a governmental claim as required by the Wyoming Governmental Claims Act (WGCA)?

2. Does the WGCA include a waiver of immunity that makes Cosco's claim(s) actionable?

3. Does the lack of a remedy under Wyoming law for Cosco's claims violate either the Wyoming or United States constitutions?

## FACTS AND PROCEEDINGS

[¶ 3] This appeal arises from two separate claims brought by Cosco in the district court. In each of those claims he asserted that he had been wrongfully deprived of property he owned, by individuals who were employed by the DOC. The district court consolidated the two cases noting that, "[t]he two civil actions pertain to a single event or series of events, and are in large measure duplicative of one another." Thereafter, the district court dismissed both of Cosco's claims with prejudice. The district court reasoned that there was no waiver of governmental immunity that would make relief available for either of Cosco's claims. Moreover, even if such a waiver existed, Cosco had failed to timely file a governmental claim with the proper State entity, as prescribed by the governing statutes.

[¶ 4] Cosco's claims allege that, while he was an inmate under the supervision and control of the DOC, at the Wyoming State Penitentiary (WSP), he was wrongfully deprived of property. Although these two

---

1.  § 25–1–105. Powers of department; care of persons committed outside of state.

(a) The department of corrections shall adopt rules and regulations necessary to carry out its functions. The promulgation of substantive rules by the department, the conduct of its hearings and its final decisions are spe-

cifically exempt from all provisions of the Wyoming Administrative Procedure Act including the provisions for judicial review under W.S. 16–3–114 and 16–3–115. The department's rules shall be filed in the office of the secretary of state.

Wyo. Stat. Ann. § 25–1–105 (LexisNexis 2009).

claims involve many similar legal questions, they differ with respect to the nature of the property lost or confiscated and the process by which the property came to be lost or confiscated. The first of his two claims arose following the murder of a prison guard at the penitentiary, after which more restrictive inmate property regulations were instituted. As early as 1995, Cosco was notified that the new regulations would not allow him to keep certain personal property, including hobby materials, in his cell. Cosco was notified that his non-complying property would be confiscated and would eventually have to be sent out of the penitentiary by him, to a person of his choice, failing which it would likely be destroyed.

[¶ 5] In November 1997, some of Cosco's property was confiscated. In June of 2005, Cosco was notified that his property would be destroyed because he had failed to send it to someone of his choice outside the penitentiary. Cosco submitted a claim form to the DOC asking that he be repaid for the property's value. That claim was received by DOC on September 11, 2007. Of significant importance to this appeal, Cosco does not contend that he submitted a notice of claim as required by Wyo. Stat. Ann. § 1-39-113(c) (LexisNexis 2009), nor was such a claim received by the State:

### § 1-39-113. Claims procedure.

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

(b) The claim shall state:

(i) The time, place and circumstances of the alleged loss or injury including the name of the public employee involved, if known;

(ii) The name, address and residence of the claimant and his representative or attorney, if any; and

(iii) The amount of compensation or other relief demanded.

(c) *All claims against the state shall be presented to the general services division of the department of administration and information.* Claims against any other governmental entity shall be filed at the business office of that entity. In the case of claims against local governments the claim submitted need not be acted upon by the entity prior to suit. [Emphasis added.]

[¶ 6] The second of Cosco's two claims arose when he was transferred by the DOC to Ely State Prison in Nevada on December 21, 2002. Cosco was returned to Rawlins on February 18, 2005. Some of the property Cosco took with him to Nevada was not allowed at that facility and it was sent back to the WSP where it was stored. Some of the stored items Cosco claims were items of religious significance. They included a leather cover for his satanic bible with a satanic medallion, as well as a medallion of Baphomet ("… an idol the Templars were accused of worshipping …" *Webster's Third New International Dictionary,* 173 (1986)). At some point in time, the above described items were either destroyed or otherwise went missing. After Cosco's return to the WSP from Nevada, other property being withheld from him was also destroyed or otherwise went missing. Cosco was informed on June 23, 2005, that his confiscated property must be sent to a person of his choice outside the prison or it would be destroyed.

[¶ 7] In response to the confiscation and disposal of his property, Cosco submitted several "claims" over the loss of that property. However, as noted above, Cosco had never submitted the claim required by § 1-39-113(c).

## STANDARD OF REVIEW

[¶ 8] When we review the granting of a summary judgment,

> [W]e employ the same standards and use the same materials as were employed and used by the trial court. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Summary judgment is appropriate only when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the trial court's ruling.

*Platt v. Creighton*, 2007 WY 18, ¶ 7, 150 P.3d 1194, 1198 (Wyo.2007) (quoting *Black v. William Insulation, Co.*, 2006 WY 106, ¶ 7, 141 P.3d 123, 126–27 (Wyo.2006)).

> We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Lever v. Community First Bancshares, Inc.*, 989 P.2d 634, 637 (Wyo.1999) (quoting *Duncan v. Town of Jackson*, 903 P.2d 548, 551 (Wyo.1995)).

*Sheaffer v. State ex rel. Univ. of Wyo.*, 2009 WY 19, ¶¶ 12–13, 202 P.3d 1030, 1036–37 (Wyo.2009).

## DISCUSSION

### Applicability of WGCA

[¶ 9] In Wyoming, no suit may be maintained against the State unless the legislature has authorized such a suit. Wyo. Stat. Ann. §§ 1–39–101 through 121 (LexisNexis 2009); and see *May v. Southeast Wyo. Mental Health Center*, 866 P.2d 732, 736 (Wyo. 1993). The WGCA does not provide an exception to the rule of immunity for the claims pressed by Cosco. Furthermore, Cosco has failed to demonstrate that the claims he did file met the stringent requirements of the WGCA. Cosco has brought his claims against the State of Wyoming generally, the DOC, and two former and present employees of the DOC/WSP. However, he has failed to establish that the WGCA has waived immunity for any of those claims. We have carefully examined Cosco's pleadings, as well as the carefully circumscribed exceptions the legislature has established to the rule of immunity, including the one addressed to "peace officers," and we agree with the district court and the Attorney General that Cosco's claims, as articulated in his detailed pleadings, are not cognizable under any of the exceptions to the rule of immunity.

[¶ 10] Furthermore, we have consistently construed the procedural requirements set out in the WGCA very strictly and as jurisdictional requirements. Viewing Cosco's claims in the light most favorable to him we are compelled to agree with the district court that none of his claims were filed within the time periods prescribed in § 1–39–113(a). See *Wilson v. Town of Alpine*, 2005 WY 57, ¶ 5, 111 P.3d 290, 291–92 (Wyo.2005). Thus, the district court was correct in granting summary judgment in favor of the State Appellees as to all of his claims. Moreover, the WGCA does not provide a waiver of immunity for the DOC's conduct at issue here, even if the filings had otherwise met the statutory requirements.

### Due Process of Law

[¶ 11] The discussion set out above is essentially dispositive of Cosco's claims. However, given the multifaceted, albeit ill-defined, pleadings and other papers filed by Cosco in the district court, as well as in this Court, we will address other matters that merit mention in this appeal. We would be remiss if we did not at least mention in passing the amount of attention and resources the courts have given to Cosco's complaints. He asserts that he has been denied "due process of law" and "equal protection of the law," and that as a general matter his "rights" of every kind and description have been trampled upon. Cosco raised these issues through the grievance

process available to him under the rules and regulations which govern Wyoming's penal institutions. The grievances Cosco filed were addressed by the warden of the WSP and/or the DOC in a timely and courteous manner. These internal procedures are the sort of rules and regulations contemplated by § 25-1-105 and the final result of an inmate grievance is not a matter that may be *appealed* to the courts. See generally Wyoming Rules of Appellate Procedure. Of course, Cosco may, and has, utilized other avenues of relief to litigate his "grievances." See U.S. Const. amend. 1; Wyo. Const., art 1, § 8.

[¶ 12] Cosco has aired his contentions of wrong-doing by WSP and DOC personnel in both the state and federal courts. As an example, we decided a related case in *Cosco v. Uphoff,* 2003 WY 30, ¶¶ 1–5, 66 P.3d 702, 702–3 (Wyo.2003):

> Appellant Louis D. Cosco (Cosco) appeals the dismissal for failure to state a claim upon which relief could be granted pursuant to W.R.C.P. 12(b)(6) of his declaratory judgment action against various officials of the Wyoming State Penitentiary (WSP) alleging that they wrongfully confiscated his personal property. We will not address the propriety of the district court's ruling because Cosco failed to timely file his notice of appeal.

> Cosco is a long-term resident of WSP. Since his incarceration, which began in 1969, he had acquired a considerable amount of personal property. In 1997, WSP amended the Inmate Rules Handbook, including the rules specifying the personal property an inmate may possess. Pursuant to the revised rules, WSP removed a significant portion of Cosco's personal property. Initially, Cosco brought suit in federal court, but that action was dismissed. See *Cosco v. Uphoff,* 195 F.3d 1221 (10th Cir.1999). In September of 2001, Cosco signed a release under which WSP agreed to pay for certain specified items in exchange for his agreement to release "all claims ... in any way arising out of the alleged loss of the following described property and any other matters relating to the Wyoming State Penitentia-

ry's disposition of any and all of his property prior to the date of his signature below."

> On September 25, 2001, Cosco filed this action seeking declaratory relief pursuant to the Uniform Declaratory Judgment Act (UDJA). Wyo. Stat. Ann. §§ 1–37–101 to –115 (LexisNexis 2001). The defendants, various employees of WSP, countered with a motion to dismiss pursuant to W.R.C.P. 12(b)(6) for a failure to state a claim upon which relief could be granted. After a hearing, the district court issued a decision letter on March 22, 2002 granting the defendants' motion. The district court based its decision upon four grounds: (1) Cosco waived all of his claims when he signed the release; (2) the UDJA does not provide for the recovery of monetary damages; (3) the defendants were immune from suit under the Wyoming Governmental Claims Act (WGCA); and (4) Cosco did not comply with the requirements of the WGCA by failing to file a notice of claim. The final paragraph in the district court's decision letter stated: "This DECISION LETTER will serve as the Court's final determination and order of this matter." Cosco filed his notice of appeal on April 25, 2002, 34 days after the issuance of the decision letter.

> Rule 2.01 of the Rules of Appellate Procedure provides that "[a]n appeal from a trial court to an appellate court shall be taken by filing the notice of appeal with the clerk of the trial court within 30 days from entry of the appealable order...." The timely filing of a notice of appeal is jurisdictional, in the absence of which, we must dismiss. *Wiens v. American Motors Corporation,* 717 P.2d 322, 323 (Wyo.1986); *Jackson v. State,* 547 P.2d 1203, 1205 (Wyo.1976). Without a timely notice of appeal, the jurisdiction of this Court is not invoked. *Wiens,* 717 P.2d at 322.

> Ideally, the district court should have issued a final order separate from its decision letter. (FN1) The order could have been attached to the decision letter or issued concurrently therewith. Nonetheless, the decision letter clearly stated that it was to constitute the district court's final, appealable order in this proceeding.

Cosco's notice of appeal was filed 34 days thereafter and was clearly untimely under our rules. Cosco did not attempt to make a showing of excusable neglect in support of a request for an extension of time to file his notice of appeal pursuant to Rule of Appellate Procedure 2.01(a)(1). Accordingly, this Court's jurisdiction was never invoked, and Cosco's appeal must be dismissed.

Dismissed.

(FN1.) Cosco does not raise the question of whether it is appropriate for a decision letter to constitute a final order. We note, however, for the benefit of the district courts that any decision letter intended to operate as a final order must comply with the requirements of W.R.C.P.

[¶ 13] The Tenth Circuit Court of Appeals addressed Cosco's issues in 1997.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

EBEL, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs, seven inmates of the Wyoming State Penitentiary appearing pro se, appeal from the district court's order dismissing their civil rights suit without prejudice. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

Plaintiffs are all long-term inmates who have acquired considerable amounts of personal property over the years. Plaintiffs filed both grievances and this suit under 42 U.S.C. § 1983 to challenge a proposed administrative regulation that would have instituted severe restrictions on the types and amounts of personal property any inmate could keep in his cell, and under which plaintiffs claimed they would have been unconstitutionally required to dispose of much of their property without compensation. After the suit was filed, defendants informed the district court that they had decided not to adopt the proposed policy as originally drafted. Instead, to resolve the numerous grievances challenging the policy, defendants added a "grandfather" clause to allow inmates already in possession of property in excess of the new limits, including plaintiffs, to keep their property, subject to forfeiture later for various disciplinary infractions. *See, e.g.,* R. Vol. II, doc. 17, attachment at 1, 4. Although the original complaint was then moot, plaintiffs requested leave to amend their complaint to challenge the grievance resolutions, under which they claim they are still subject to being unconstitutionally deprived of their property without compensation. The district court denied leave to amend because plaintiffs had not alleged an actual injury and their claim was therefore not ripe for adjudication. The court dismissed plaintiffs' complaint without prejudice to refiling later.

Among various arguments on appeal, plaintiffs contend that: (1) the district court erred in holding their claim was not ripe, and (2) defendants can be sued in their official capacities for declaratory and injunctive relief. Defendants counter that: (1) under *Hudson v. Palmer,* 468 U.S. 517[, 104 S.Ct. 3194, 82 L.Ed.2d 393] (1984), and *Parratt v. Taylor,* 451 U.S. 527[, 101 S.Ct. 1908, 68 L.Ed.2d 420] (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327[, 106 S.Ct. 662, 88 L.Ed.2d 662] (1986), plaintiffs do not state a claim for unconstitutional deprivation of property unless they show that post-deprivation remedies are inadequate; (2) plaintiffs failed to exhaust state remedies; (3) plaintiffs erroneously sued defendants in their official capacities, in which they are entitled to Eleventh Amendment immunity; and (4) plaintiffs seek an advisory opinion.

"Ripeness is a question of law, which we review de novo." *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995). The anticipated deprivations of property challenged here are those that will be authorized by the new prison policy, not random or unauthorized forfeitures. For this reason, "the availability of an adequate state post-deprivation remedy is irrelevant and does not bar [plaintiffs'] § 1983 claim." *See Gillihan v. Shillinger,* 872 F.2d 935, 939–40 (10th Cir. 1989). It is the adequacy of the state's *pre* deprivation hearing that would be at issue here, if plaintiffs had alleged a deprivation of property had occurred or was imminent. *See Abbott v. McCotter,* 13 F.3d 1439, 1443 (10th Cir.1994) (citing *Gillihan,* 872 F.2d at 939–40). Plaintiffs are not required to exhaust state administrative remedies before asserting their § 1983 claim. *See Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Dept. of Social Servs.,* 436 U.S. 658[, 98 S.Ct. 2018, 56 L.Ed.2d 611] (1978). Although plaintiffs erroneously sued defendants only in their official capacities, in which they are both immune from claims for damages, *see Arizonans for Official English v. Arizona,* [520 U.S. 43,] 117 S.Ct. 1055, 1069[, 137 L.Ed.2d 170,] 1997 WL 84990, at *14 n. 24 (Mar. 3, 1997), plaintiffs could easily correct that problem by amending their complaint. *See Griess v. Colorado,* 841 F.2d 1042, 1045 (10th Cir.1988).

We nevertheless affirm the dismissal because plaintiffs have alleged no actual injury. This creates not only a problem of ripeness but, more importantly, of standing, because a mere potential injury "does not suffice for the concrete, actual or imminent injury ... required for standing". *See Smith v. Colorado Dept. of Corrections,* 23 F.3d 339, 341 (10th Cir.1994). As in *Smith,* "[a]t this point, any alleged deprivation is conjectural and speculative." *Id.* Plaintiffs' conclusory allegation that the new policy does not provide for a predeprivation hearing in various unspecified circumstances is too vague to demonstrate an actual or imminent injury. Because plaintiffs do not claim to be able to remedy this

defect, the district court did not abuse its discretion by denying them leave to amend their complaint. *See Reeder v. American Economy Ins. Co.,* 88 F.3d 892, 896 (10th Cir.1996). We need not address the parties' other arguments.

The judgment of the United States District Court for the District of Wyoming is AFFIRMED.

*Cosco v. Uphoff,* 108 F.3d 1388, 1997 WL 141185 (10th Cir.1997).

[¶ 14] In a 1999 decision, the Tenth Circuit Court of Appeals ruled:

> Appellants, eight pro se Wyoming prison inmates, appeal from a district court order under Fed.R.Civ.P. 12(b)(6) dismissing their civil rights complaint against several employees of the Wyoming Department of Corrections. We affirm.

> While incarcerated, appellants have acquired personal property, including "hobby" and legal materials, which they kept in their cells. Shortly after the murder of a corrections officer on June 26, 1997, appellees adopted a policy that limited the amount of property prisoners could keep in their cells. The new policy provided for the storage of unauthorized property for ninety days and gave inmates the opportunity to ship their property out of the prison to a location of their choice. As a result of the new policy, prison officials removed property from appellants' cells.

> Appellants filed their complaint under 42 U.S.C. § 1983, alleging violations of their First, Fifth, Ninth and Fourteenth Amendment rights. Appellants claimed that appellees deprived them of their property without due process or equal protection of the law.[FN2] In addition, appellants contended that appellees denied them access to the courts by restricting the legal materials they could keep in their cells, delaying communications among prisoners, restricting photocopying, and limiting access to the law library.

> FN2. Although appellants appear to have raised an equal protection claim in the district court and on appeal, they have failed to allege that they were treated differently than those similarly

situated. Consequently, their equal protection claim is entirely conclusory and without merit.

## I. Due Process Claim

Appellants argue that the Wyoming State Penitentiary's Inmate Rules Handbook (IRH) creates a constitutionally protected right to keep the disputed property in their cells and a constitutionally protected right to any income derived from that property. They allege that when prison officials enforced the new policy without hearings, they deprived appellants of their property without due process of law.

It is clear from the complaint that appellants are not arguing about the ownership of the property but rather the right to keep the hobby and legal materials in their cells. Essentially, they argue that by propounding the affirmative language of the prison regulations extant before the new policy, the state created a property interest in the prisoners' right to keep these items in their cells which could not be taken away without due process of law. They also include a claim of property interest in income they would have derived from their hobby activities. They rely on the methodology of *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), to arrive at their claim of property interest protected by the Due Process Clause. Although *Hewitt* involves due process by virtue of a claimed liberty interest, the same methodology has been employed in claims of property interests protected by the Due Process Clause of the Fourteenth Amendment.

Basically, the *Hewitt* methodology on which appellants rely looks to mandatory language in statutes or regulations to determine whether the right in question rises to a level which can only be withdrawn by observing due process standards. In claims involving property interest, the methodology relies on a showing that the regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33

L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694[, 33 L.Ed.2d 570] (1972); and *Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989).

In *Sandin v. Conner,* 515 U.S. 472, 477–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court expressly rejected that methodology in the context of prison liberty interests. While we acknowledge that at least one circuit has expressed its opinion that *Sandin* "did not instruct on the correct methodology for determining when prison regulations create a protected property interest," *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir. 1995),[FN3] we do not see how the Supreme Court could have made clearer its intent to reject the *Hewitt* analysis outright in the prison context. Indeed, if we are to avoid *Hewitt's* "two undesirable effects" ((1) creating disincentives for states to codify prison management procedures and (2) entangling the federal courts in the day-to-day management of prisons) in the context of prison property interests, *Sandin,* 515 U.S. at 482, 115 S.Ct. 2293, and return the focus of our due process inquiry from "the language of a particular regulation" to "the nature of the deprivation" as *Sandin* mandates, *id.* at 481, 115 S.Ct. 2293, we must conclude that the Supreme Court foreclosed the possibility of applying the *Hewitt* methodology to derive protected property interests in the prison conditions setting.[FN4] The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." [FN5] *Id.* at 486, 115 S.Ct. 2293.

> FN3. Without directly holding, the Sixth and Ninth Circuits have also suggested that *Hewitt*-type property interests are not affected by *Sandin. See Woodard v. Ohio Adult Parole Auth.,* 107 F.3d 1178, 1182–83 (6th Cir.1997) (noting that "the Supreme Court has made it clear that both state law and the Due Process Clause itself may create [a liberty] inter-

est," while the prevailing doctrine instructs that "state law controls as to the existence of a property interest"), *rev'd on other grounds,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998); *Martin v. Upchurch,* 67 F.3d 307, 1995 WL 563744, at *2 n. 2 (9th Cir.1995) (unpublished disposition) (concluding that under *Sandin* a prisoner "had no liberty interest in his prison job," but ruling that the prisoner had no property interest in the prison job because state law left the employment of prisoner to the discretion of prison officials and the prisoner "failed to cite any prison regulation which mandates a particular classification").

The Seventh Circuit appears to lean the other way, suggesting without directly holding in *Abdul–Wadood v. Nathan,* 91 F.3d 1023 (7th Cir.1996), that *Sandin* controls claims of *Hewitt*-based property interests in the prison setting. *See id.* at 1025 (fortifying its conclusion that minor disciplinary penalties imposed by prison officials "do not implicate any liberty or property interest" by citing to *Sandin* ); *see also Logan v. Gillam,* 96 F.3d 1450, 1996 WL 508618, at *3 (7th Cir.1996) (unpublished disposition) (citing *Abdul–Wadood* to support its conclusion: "Although *Sandin* involved a claim that a regulation created a liberty interest, its analysis also applies to claims that prison regulation create federally-enforceable property interests.")

FN4. Our conclusion is further bolstered as we consider it unlikely that the Supreme Court would establish a standard in the prison setting more sensitive to property interests than liberty interests. At times the Court has defined the two interests differently. In Justice Breyer's *Sandin* dissent, for example, he noted, "In protecting property, the Due Process Clause often aims to protect *reliance,* say, reliance upon an 'entitlement'.... In protecting liberty, however, the Due Process Clause protects, not this kind of reliance upon a government-conferred benefit, but rather an absence of government restraint...." *Sandin,*

515 U.S. at 497–98, 115 S.Ct. 2293 (Breyer, J., dissenting) (citations omitted). At other times the Supreme Court has used the two interests analogously. Consider, for example, the Supreme Court's liberty interest analysis in *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which "parallel[ed] the accepted due process analysis as to property" in part because "a person's liberty is equally protected," *id.* at 558, 94 S.Ct. 2963, or the Court's interchangeable use of the two terms in *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), where it reviewed "a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." We do not have to decide whether the two interests are to be equally protected, but it seems appropriate to conclude that if one merited more protection than the other that would be liberty.

FN5. The Court noted:

Prisoners such as Conner, of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

*Sandin,* 515 U.S. at 487 n. 11, 115 S.Ct. 2293.

Appellants claim in the case at hand that mandatory language in the regulations governing what the prisoners could keep in their cells created a property interest or entitlement and ensured them a continuation of the same interest absent due process. That is precisely the methodology rejected by the Supreme Court in *Sandin.* The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the new analysis set forth in *Sandin.* Apply-

ing the Court's analysis, we cannot say that the new regulations promulgated in this case present "the type of atypical, significant deprivation [of their existing cell property privileges] in which a State might create a [property] interest." *Id.* at 486, 115 S.Ct. 2293.

Appellants in their brief make clear that they are also relying on a *Hewitt–Roth* argument about income from hobbies, not the right to a prison job foreclosed by *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986). Arguing that hobby-based income is actually a property interest and not a prison job, however, does not limit the applicability of *Sandin.* The *Hewitt–Roth* methodology is as inapplicable to the claim of a right to earn hobby incomes as it is to the kind of property interests discussed above.

Even though the trial court did not rely on *Sandin* analysis, our review of the complaint leads us to conclude that *Sandin* applies and that the trial court properly dismissed all the due process claims pursuant to Rule 12(b)(6).

## II.  Denial of Access to the Courts

To establish that they have been denied access to the courts, appellants must demonstrate "actual injury." *See Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In their materials, however, Appellants have merely set forth conclusory allegations of injury. There is no evidence to indicate that appellees hindered appellants' efforts to pursue a legal claim. Therefore, we agree with the district court that, under Rule 12(b)(6), appellants have failed to state a claim for denial of access to the courts.

*Cosco v. Uphoff,* 195 F.3d 1221, 1222–25 (10th Cir.1999).

[¶ 15] As evidenced from the materials quoted above (and not including the voluminous internal grievance procedures which Cosco pursued within the WSP that are a part of the record on appeal before this Court), it is clear that Cosco has been provided due process of law. Many, if not most, of his issues, have been answered substantively. Those few issues that were not substantively

addressed are deemed by the law to have been resolved (even though dismissed or otherwise not addressed on their merits), because Cosco had a full and complete opportunity to bring them before the courts, but he failed to adhere to mandatory procedural rules in doing so.

## Equal Protection

[¶ 16] Cosco contends he has been denied equal protection of the law because the legislature did not include the DOC and the WSP within the waiver of the rule of immunity. In *White v. State,* 784 P.2d 1313, 1318 (Wyo.1989) we explained:

We have held that the personal and political rights secured by the equal protection provisions of Article 1, §§ 2 and 3, are not absolute, and that those sections do not preclude the legislature from imposing reasonable restrictions on such rights in the public interest. *Haskins v. State ex rel. Harrington,* 516 P.2d 1171, 1173–74, 70 A.L.R.3d 1171 (Wyo.1973). Similarly, we have held that legislative restrictions on those rights satisfy our constitutional standard of substantive due process unless they are unreasonable and arbitrary. *Cheyenne Airport Board,* 707 P.2d at 726–27. Thus, a statute which would be deemed constitutional under the "reasonableness" standard of the Fourteenth Amendment to the United States Constitution also complies with the requirements of Article 1, § 6. *State v. Laude,* 654 P.2d 1223, 1228 (Wyo.1982).

We reach the same result when analyzing such a statute according to the standard of Article 1, § 7, for much of the substantive content of § 6 is derived from the language of § 7. See generally *State v. Langley,* 53 Wyo. 332, 84 P.2d 767, 770–71 (1938) (the separate inclusion of both § 6 and § 7 in our constitution represented the framers' understanding that the concept of due process consisted not only of the historically accepted procedural element evident on the face of § 6, but also entailed restraints on the passage of substantive laws such that the majority could exercise its will against an individual only to the extent that such an exercise was reason-

able and not arbitrary); *Weaver v. Public Service Commission*, 40 Wyo. 462, 278 P. 542, 547–48 (1929) (Article 1, §§ 2 and 7 and the general nature of the police power provided in the content of Article 1, § 6, require legislative actions to be reasonable, to operate with equality, and to be in the service of the public's welfare).

Appellant's reliance on Article 1, § 34 and Article 3, § 27 is also unfounded. We have held that these complementary provisions do not proscribe reasonable classifications; that they only require a statute to operate in a similar manner upon all persons in the same circumstances. *Meyer v. Kendig*, 641 P.2d 1235, 1240 (Wyo.1982); *Mountain Fuel Supply*, 578 P.2d at 1356; *May v. City of Laramie*, 58 Wyo. 240, 131 P.2d 300, 305–06 (1942). Furthermore, it is obvious that appellant's reliance on these provisions is nothing more than a restatement of his equal protection argument, for he does not argue that the contested statute constitutes a prohibited special law. He merely argues that, as a general law, it must operate uniformly. Therefore, our only concern under these provisions is whether any classification accomplished by the statute was reasonably related to a legitimate legislative goal. *Id.*

Finally, appellant asserts that W.S. 1–39–120, by denying his cause of action, amounts to a limitation on damages in contravention of Article 10, § 4 of the Wyoming Constitution. We expressly rejected this general argument in *Meyer*, 641 P.2d at 1239. Additionally, speaking specifically of the Governmental Claims Act, we have held that "Art. 10, § 4 may prevent the legislature from imposing arbitrary limits on damages, but it does not prevent limitations on the types of actions which may be brought against the State." *Troyer*, 722 P.2d at 163. Thus, this provision is inapplicable to the present case.

Appellant, therefore, has cited no provision of the Wyoming Constitution which provides him with protections independent of substantive due process and equal protection analysis. Neither has he established that he is entitled to anything more than traditional rational scrutiny of § 1–39–120.

Also see *Krenning v. Heart Mountain Irr. Dist.*, 2009 WY 11, ¶¶ 33–36, 200 P.3d 774, 784–85 (Wyo.2009).

[¶ 17] The legal classification Cosco asserts is presumably that of inmates of the WSP who are unable to sue under the WGCA for the type of claim at issue here. To satisfy the first element of an equal protection challenge, a claimant must identify a classification of persons explicitly contained within a given piece of legislation. See *Greenwalt v. Ram Restaurant Corp.*, 2003 WY 77, ¶¶ 38–46, 71 P.3d 717, 729–733–34 (Wyo.2003). The WGCA does not differentiate between inmates and non-inmates. The WGCA simply enumerates certain tortious conduct for which the State waives the generally applicable rule of immunity. There is no attempt to distinguish between classes of individuals; the WGCA identifies causes of action which are actionable and those not enumerated remain in the category where immunity prevails.

[¶ 18] Moving to the second step of the *Krenning* inquiry, the legitimate legislative objective of the WGCA is to conserve public funds and preserve a fair and viable system of compensating persons injured by governmental actions. *White*, 784 P.2d at 1320, and see Wyo. Stat. Ann. § 1–39–102(a) (Lexis-Nexis 2009).

[¶ 19] The third and final inquiry is whether the legislative classification is reasonably related to the achievement of an appropriate legislative purpose. Cosco's claims arise in a setting where the sort of property loss/destruction at issue here is unpredictable, and further it is often virtually impossible to ascertain a reasonable value. For instance, here Cosco seeks tens of millions of dollars in compensation for more than a thousand separate pieces of property. Excluding such losses from the beneficent purposes of the WGCA is rational and readily withstands the equal protection provisions of both the United States and the Wyoming constitutions.

## Cosco's Right to Practice his Religion

[¶ 20] This Court has always recognized that freedom of religion is a fundamental

right. *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001). Wyo. Const. art. 1, § 18 provides:

### § 18. Religious liberty.

The free exercise and enjoyment of religious profession and worship without discrimination or preference shall be forever guaranteed in this state, and no person shall be rendered incompetent to hold any office of trust or profit, or to serve as a witness or juror, because of his opinion on any matter of religious belief whatever; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state.

[¶ 21] Wyo. Const. art. 21, § 25 provides:

### § 25. Religious liberty.

Perfect toleration of religious sentiment shall be secured, and no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship.

[¶ 22] However, the religious practices of inmates may be limited. See 60 Am.Jur.2d *Penal and Correctional Institutions*, §§ 37–46 (2003 and Supp.2009). We decline to address Cosco's assertions that his religious liberties have been violated by the DOC and the WSP. Those assertions are supported by the barest of allegations that articles he claimed to be of religious significance to him were intentionally destroyed, misplaced, or lost by the WSP and DOC. His pleadings contain no averments that he has, because of these circumstances, been deprived of the right to otherwise freely pursue his religious beliefs, or that the destruction, misplacement, or loss of the religious articles at issue was designed to frustrate his right to freely practice his religion, within the limitations rightfully imposed by the DOC and WSP for the safety and security of DOC staff and other inmates in the charge of the DOC.

**Creation of Judicial Remedy to Address Cosco's Claims**

[¶ 23] Cosco contends that the governing statutes and policies of the State deprive him of any sort of meaningful remedy and that, therefore, this Court must create a remedy for his peculiar circumstances. To the extent that this Court may have the authority to fashion a legal or equitable remedy to aid in the resolution of the circumstances set out in Cosco's pleadings, we decline to do so.

### CONCLUSION

[¶ 24] The district court's order which is the subject of this appeal is affirmed in all respects. In order that the contentions advanced by Cosco in these proceedings, as well as in other proceedings which we have cited herein, be brought to finality, we direct that Cosco be prohibited from filing any further litigation relating to the subject matter of this case in any court of the State of Wyoming without first having obtained leave of this Court to do so.