976 F.2d 740
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Feldon JACKSON, Jr., Plaintiff-Appellant,
v.
CENTRAL NEW MEXICO CORRECTIONAL FACILITY; Steve Saavedra;
New Mexico Corrections Academy; Robert Tenorio,
Defendants-Appellees.
 No. 91-2234.
 United States Court of Appeals, Tenth Circuit.
 Sept. 21, 1992.
 
 Before LOGAN, EBEL and PAUL KELLY, Jr., Circuit Judge.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Feldon Jackson, Jr., an inmate in the Central New Mexico Correctional Facility (Facility), appeals the district court's dismissal of his civil rights claims brought against the Facility and its officer, Lieutenant Steve Saavedra, and the New Mexico Corrections Academy (Academy) and its officer, Captain Robert Tenorio. Because we agree with the district court that Plaintiff has failed to raise a cognizable claim under 42 U.S.C. § 1983, we affirm.
 
 
 3
 Plaintiff's complaint states that in 1988, as part of a training exercise for correctional cadets, the area of the Facility in which Plaintiff was housed was subject to a surprise general search or "shakedown." Plaintiff's complaint further alleges that after the search was completed, he discovered that his TV antenna had been broken and his AM/FM radio had been taken. He also alleges that as part of the shakedown he was strip searched in the presence of female cadets. Plaintiff argues that these occurrences violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. The district court dismissed plaintiff's complaint as failing to state a claim.
 
 
 4
 Although the district court's Memorandum Opinion and Order referenced Fed.R.Civ.P. 12(b)(6), it also considered plaintiff's cross-motion for summary judgment. It seems clear that the court considered not only the words of the complaint, but also the attachments submitted by plaintiff and the allegations and arguments in the briefs and motions. Effectively, the court granted summary judgment to defendants under Fed.R.Civ.P. 56. Our review proceeds on that basis.
 
 
 5
 Plaintiff's initial problem is that, by naming the Central New Mexico Correctional Facility, the New Mexico Corrections Academy, and officers of those institutions as Defendants, he is attempting to sue the State of New Mexico in federal court. Such action is barred by the Eleventh Amendment. Wojciechowski v. Harriman, 607 F.Supp. 631, 633 (D.N.M.1985). "This bar extends to suits against the state itself as well as against one of the state's agencies or departments, absent a state waiver of sovereign immunity." Id. (citing Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982)). The State of New Mexico has not waived its immunity from suit in federal court. Id. at 634 (citing N.M.Stat.Ann. § 41-4-4F). The fact that Plaintiff asks for damages from specifically identified officers in "their professional capacities" will not solve this jurisdictional problem. "The eleventh amendment bars a suit for damages in federal court when the action is in essence one for recovery of money from the state and the state is the real, substantial party in interest, notwithstanding that individual officials are nominal defendants." Id. (citing Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945)). Thus, it was proper for the district court to dismiss the complaint against the Facility, the Academy, and the officers in their official capacities.
 
 
 6
 Plaintiff also seems to have sued Lieutenant Saavedra and Captain Tenorio in their individual capacities.[1] "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," Hafer v. Melo, --- U.S. ----, 112 S.Ct. 358, 365 (1991), and thus are subject to suit. Moreover, the Eleventh Amendment does not raise a bar to this action. Id. We therefore address the sufficiency of Plaintiff's claims against the two officers.
 
 
 7
 Plaintiff alleges that during the shakedown his TV antenna was damaged and an AM/FM radio was stolen. Plaintiff, however, does not allege that Lieutenant Saavedra and/or Captain Tenorio actually interfered with his property. The closest Plaintiff comes to identifying an actual culprit is to state that he "feels that the Correctional Cadets were the Perpetrators in the above items being damaged and confiscated." (Comp. at 2.) Thus, the most Plaintiff has alleged against these Defendants is a negligent training or supervision claim.[2] Because negligent conduct does not rise to the level of a constitutional deprivation under the due process clause of the Fourteenth Amendment, Daniels v. Williams, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"), such claim is not cognizable under 42 U.S.C. § 1983, and the district court was correct in dismissing it.
 
 
 8
 Plaintiff also complains that he was not afforded procedural due process in his effort to redress the loss of his property. However, any procedural due process to which Plaintiff was entitled was provided by the post-deprivation grievance procedure available within the prison system. Where the loss is the "result of a random and unauthorized act by a state employee," see Parratt v. Taylor, 451 U.S. 527, 541 (1981), partially overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986), the requirements of procedural due process are satisfied by a post-deprivation hearing at which there is a meaningful opportunity to determine respective rights and liabilities. Id. The fact that Plaintiff did not receive the result he desired from the grievance procedure does not mean that he was denied due process.
 
 
 9
 In addition to claims regarding his property, Plaintiff argues that his Fourth Amendment rights were violated when he was strip searched in the presence of female cadets.
 
 
 10
 There is a constitutional right to privacy. Although convicted prisoners are not entitled to the full protection of the Constitution, they "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.
 
 
 11
 Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir.1982) (citations omitted).
 
 
 12
 In Hudson v. Palmer, 468 U.S. 517, 536 (1984), the Supreme Court determined that a prisoner has no Fourth Amendment privacy interest in his prison cell. This ruling, however, has not been extended to eliminate a prisoner's privacy interest in the search of his or her person.
 
 
 13
 "[T]his court has recognized a qualitative difference between property searches and searches of a prisoner's person. The prisoner's privacy interest in the integrity of his own person is still preserved under Wolfish, 441 U.S. at 558, in which the Supreme Court applied traditional fourth amendment analysis to a constitutional challenge by prisoners to personal body searches.
 
 
 14
 Dunn v. White, 880 F.2d 1188, 1191 (10th Cir.1989), cert. denied, 493 U.S. 1059 (1990); see also Levoy v. Mills, 788 F.2d 1437, 1439 n. ** (10th Cir.1986) ("[P]ersonal body searches of inmates must be reasonable under the circumstances.").
 
 
 15
 In a prison setting, however, claims of constitutional violation must be evaluated in light of the central prison objective, the maintenance of institutional security. Dunn, 880 F.2d at 1191. Prison regulations requiring strip searches could be valid if "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79 (1987).
 
 
 16
 Plaintiff acknowledges that the shakedown and search were part of a training exercise for cadets of the New Mexico Correctional Academy.[3] This training exercise apparently involved a general lockdown. Plaintiff makes no indication that he was in any way singled out for special treatment. Since there may well be times in which female personnel will of necessity need to strip search male prisoners, it is important that they be trained in the appropriate procedure. See Cookish v. Powell, 945 F.2d 441, 446-47 (1st Cir.1991) (during times of emergency, nearest officers, regardless of their sex, should be able to inspect inmates). Training female cadets using male inmates also insures that the cadets are desensitized to whatever embarrassment or discomfort they may experience in conducting such a search which might interfere with their ability to perform their duties during a crisis situation. Finally, this training furthers the maintenance of institutional security and is reasonably related to a legitimate penological purpose.
 
 
 17
 The strip search of plaintiff was a "sufficiently productive mechanism," see Delaware v. Prouse, 440 U.S. 648, 659 (1979), by which to demonstrate proper search technique to justify this intrusion on plaintiff's constitutional right.[4] While we recognize that a strip search is a serious intrusion, plaintiff here never indicated that he was subject to anything more than a visual inspection of his naked body. We are mindful that "on issues of 'internal order and discipline' or 'institutional security,' courts should accord 'wide-ranging deference' to prison officials, unless there is 'substantial evidence in the record to indicate the officials have exaggerated their response.' " Dunn, 880 F.2d at 1191 (quoting Bell v. Wolfish, 441 U.S. 520, 547-48 (1979)). Plaintiff's complaint alleges no such egregious response by Defendants.
 
 
 18
 Plaintiff's claim that his treatment amounted to cruel and unusual punishment prohibited by the Eighth Amendment similarly fails. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Plaintiff's complaint does not allege more than ordinary lack of due care. Because Plaintiff does not allege that the strip search was conducted "in an abusive fashion or with unnecessary force," he does not state a claim under the Eighth Amendment. Levoy, 788 F.2d at 1439.
 
 
 19
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 It is unclear from the caption of the complaint whether the individual Defendants were sued in their official capacities, as individuals, or both. When a complaint is ambiguous regarding the capacity in which Defendants are sued, Defendants' status is determined by "reviewing 'the course of the proceedings.' " Houston v. Reich, 932 F.2d 883, 885 (10th Cir.1991) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985)). Here, Plaintiff asks for money damages from each Defendant "in His Professional Capacity" and "in His Personal Capacity." Construing this pro se complaint liberally, we find that the Defendants were sued both as officers of the state and as individuals
 
 
 [2]
 Although Plaintiff in his brief insists that he has alleged "willful and intentional deprivation" (Pl.'s Reply Br. at 4), there is no allegation in the complaint, and no facts to support a claim of intentional or willful misbehavior on the part of Defendants. In reviewing a dismissal under Rule 12(b)(6), we analyze the sufficiency of the complaint, Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986), not the sufficiency of new claims made for the first time in a brief. Plaintiff's further assertion in his brief that the cadets allegedly responsible for the loss of his property were acting in accord with Defendants' policy and procedure is similarly flawed
 
 
 [3]
 This case is therefore distinguishable from Levoy, 788 F.2d 1437, in which the plaintiff alleged that he "was subjected to a body cavity search without any justification whatsoever." Id. at 1439
 
 
 [4]
 In holding that a strip search does not violate the strictures of the Fourth Amendment per se, the Supreme Court in Wolfish established a balancing test pitting the need for the search against the rights invaded. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In arriving at that balance, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; see also Hill v. Bogans, 735 F.2d 391, 393-94 (10th Cir.1984); Clark v. Tinnin, 731 F.Supp. 998, 1004 (D.Colo.1990)
 Plaintiff's complaint does not allege any abuse or irregularity regarding the scope, place, or justification for conducting the search. "Although we must liberally construe plaintiff's factual allegations, we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded." Dunn, 880 F.2d at 1197 (citation omitted).