# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 5

**OCTOBER TERM, A.D. 2015**

**January 15, 2016**

JOHN LESLIE CHAPMAN,

Appellant
(Plaintiff),

v.

WYOMING DEPARTMENT OF CORRECTIONS,
Wyoming Medium Correctional Institution,
ROBERT O. LAMPERT, Director, STEVE
HARGETT, Warden, KELLI DOLAN, CPL Property
Officer,

Appellees
(Defendants).

S-15-0112

*Appeal from the District Court of Goshen County*
*The Honorable Keith Kautz, Judge*

*Representing Appellant:*
 Pro se.

*Representing Appellees:*
 Peter K. Michael, Attorney General; John D. Rossetti, Deputy Attorney General; Jackson M. Engels, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, and FOX, JJ., and SKAR, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**SKAR, District Judge.**

[¶1]    Appellant, John Chapman, seeks review of an order of the district court disposing of his civil claims through the granting of summary judgment in favor of Defendants/Appellees, Wyoming Department of Corrections, Robert O. Lampert, Steve Hargett, and Kelli Dolan, CPL, who will collectively be referred to as "DOC."  We affirm.

## *ISSUES*

[¶2]    Chapman raises six issues which the DOC rephrased to more closely reflect Chapman's arguments and to be consistent with the civil actions resolved by the district court.  We restate the issues as follows:

> I.    Did the district court abuse its discretion by allowing the DOC to file a second motion for summary judgment following the partial denial of its first motion?

> II.    Based on the undisputed facts of this case, did the pre- and postdeprivation remedy provided to Chapman satisfy his right to procedural due process?

> III.   Are the Government officials who are the subject of Chapman's claims entitled to qualified immunity?

> IV. Did Chapman comply with the jurisdictional requirements of the Wyoming Governmental Claims Act, Wyo. Stat. Ann. § 1-39-113?

> V.    Does the doctrine of sovereign immunity bar Chapman's claims against the State of Wyoming, two state agencies, and three state officials?

## *FACTS AND PROCEEDINGS*

[¶3]    On July 24, 2013, Chapman filed a 42 U.S.C. § 1983 civil rights action in the district court for Goshen County asserting four constitutional claims based on the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and one state law claim of negligence.  Appellant's claims allege that while he was an inmate in the state of Wyoming, under the supervision and control of the DOC, he was deprived of his personal property when penitentiary staff confiscated three televisions at different times; that the DOC violated his right to due process and that the deprivation of property caused him injury for which he is entitled to damages; and that he was wrongfully deprived of his

1

property through the negligence of the DOC. Appellees provide the following timeline of events leading up to, and forming the basis of, Chapman's allegations:

1.    June 4, 2010 – While an inmate at the Wyoming State Penitentiary (WSP), Chapman purchased a Clear Tunes Digital television (referred to hereafter as Television 1) and a remote controller from the prison commissary.

2.    December 2, 2011 – Chapman was transferred to Wyoming Medium Correctional Institution (WMCI). Chapman's authorized property was also transferred to WMCI.

3.    February 22, 2012 – Chapman was transferred to administrative segregation pending an institutional investigation. While Chapman was segregated, his property was inventoried and stored in the prison's property room. When his segregation was lifted two days later, he was returned to his housing unit and his personal property was returned to him. Television 1 and its remote was not one of the personal property items returned to Chapman when he was returned to his housing unit on February 24, 2012.

4.    Chapman alleges Television 1 was lost or taken from him while he was in administrative segregation. Chapman also alleges that he discussed the missing television with Cpl. Kelli Dolan who informed Chapman that "as soon as they had time they would look for it and return it to him once it was found." Appellant claims he also spoke about the missing television with Warden Steve Hargett.

5.    March 16, 2012 – Television 1 (and the remote control) was found in another inmate's property in violation of WDOC Policy #3.006 and confiscated as a result.

6.    Although he alleges that he discussed the "lost" or "taken" television with Cpl. Dolan and Warden Hargett, Chapman did not file a formal inmate grievance or grievance appeal related to Television 1.

7.    Chapman alleges that he was never notified that his television was found in the possession of another inmate and confiscated as a result. Chapman argues that the failure of the DOC to return Television 1 to him when they discovered it in

2

the possession of another inmate deprived him of due process. Throughout his appellate brief, Chapman's argument is: "*[W]hen Appellees discovered their mistake and found Appellant's property they confiscated it and never notified him nor was he given a copy of the confiscation form in March, 2012. This also deprived Appellant of his grievance process, there was no written notice or an opportunity to defend himself before depriving him and destroying his property. <u>This is what violated the due process clause of the Fourteenth Amendment and therefore violated Appellant's rights.</u>*" (Emphasis in original.)

8. June 18, 2012 – A second television was found in Chapman's cell – Television 2. The inmate identification number on Television 2 was rubbed off and a new number scratched in. Television 2 was deemed "altered property" in violation of Department Policy and Procedure #3.006 and confiscated. It is unclear if this is the same television that was previously confiscated from another inmate (Television 1). Chapman argues it is the same television and that it was "re-confiscated" by DOC on June 18, 2012.

9. June 25, 2012 – Chapman filed an "Inmate Request Form" arguing that Television 2 should be returned to him.

10. June 27, 2012 – Property Control Officer Kelly Dolan responded to Chapman in writing refusing to return Television 2 because it had been altered and was now contraband.

11. July 3, 2012 – Chapman filed grievance number 12-0131 pertaining to Television 2, requesting that it be returned to him or "the money put back on [his] books."

12. July 11, 2012 – Grievance Manager, Sergeant Michael McManis, conducted an examination of Television 2 and confirmed that the inmate ID number was rubbed off and a new number was scratched in. Sergeant McManis found that Television 2 had been altered in violation of policy and had been appropriately confiscated as contraband.

13. July 17, 2012 – Sergeant McManis responded to Chapman in writing, informing him "there should be no resolution or remedy granted" because "the number [on the

television] has been rubbed off and a new number was scratched in."

14. July 18, 2012 – Chapman appealed the grievance to Warden Steve Hargett of the Wyoming Medium Correctional Institution.

15. July 27, 2012 – After reviewing all of the information concerning Chapman's grievance, including Television 2 itself, Warden Hargett responded to Chapman in writing informing him that Grievance #12-0131 had been found to be without merit and denied. Warden Hargett informed Chapman that if he was dissatisfied, he could appeal the decision to Department Director Robert Lampert according to the instructions in Policy and Procedure #3.100.

16. August 13, 2012 – After reviewing the file and contents therein regarding Television 2, Director Lampert dismissed grievance #12-0131 and responded to Chapman in writing that "[i]f the [television] set was yours, it has been altered, which is now contraband and prevents it from being in the housing area. … The television confiscated from you did not have a sticker on it, and a new number was scratched into the set confiscated. … The television that was confiscated was not properly marked [and] it is considered contraband. As the television was either altered or a different television than the one you had upon arrival at WMCI, I find your grievance is without merit and is hereby dismissed."

17. November 1, 2012 – Television 2 (confiscated on June 18, 2012) was destroyed pursuant to Department Policy and Procedure #3.006 and #3.013.

18. January 3, 2013 – A property inventory completed prior to Chapman's transfer to the Wyoming State Penitentiary indicated that there was no television in Chapman's property.

19. January 4, 2013 – A second inventory after the transfer also indicated that there was no television in Chapman's property.

20. January 6, 2013 – Chapman sent an Inmate Communication Form indicating that he wanted Television 2 returned to him.

4

21. January 17, 2013 – Chapman's recorded telephone call to his mother indicates that he did not want to spend $250 on another television because he knows where he can get one for $50 and indicates an address associated with another inmate as the place to send the money.

22. March 4, 2013 – Chapman sent an Inmate Communication Form indicating that he had another television – Television 3, but he needed a new seal for this third television and needed to have it added to his property matrix. Records do not indicate that Chapman legally purchased Television 3.

23. March 7, 2013 – A State Penitentiary Package Receipt, provided by Chapman, indicates the replacement state seal for Television 3, #43335 (although this is not a proper use of a package receipt).

24. June 20, 2013 – Chapman's property inventory prior to his transfer back to the Medium Correctional Institution indicated that he had another television – Television 3.

25. June 26, 2013- The property inventory after the transfer back to the Medium Correctional Institution also indicated that Chapman had a "third" television – Television 3.

26. June 26, 2013 – Television 3 was confiscated because Chapman could not provide proof of ownership.

27. July 14, 2013 – Chapman filed grievance #13-0105, complaining that Television 3 (and a Sony Walkman) was confiscated, and he asked for their return.

28. On July 24, 2013, Chapman filed a civil rights lawsuit against the Department, alleging constitutional violations based on the confiscations of his televisions.

29. July 25, 2013 – Grievance Manager, Sergeant Shawn Hobson, responded to Chapman's grievance explaining in writing there was no record of Chapman purchasing Television 3.

5

30. July 27, 2013 – Chapman completed the first step of the appeal process by appealing the grievance manager's decision regarding Television 3 to the Warden.

31. August 15, 2013 – The appeal regarding Television 3 was denied by Warden Steve Hargett since Chapman was unable to provide proof of purchase for the third television.

32. August 16, 2013 – Chapman appealed Warden Hargett's decision regarding Television 3, which completed the grievance procedure.

33. September 9, 2013 – Director Lampert denied the appeal, concluding that this television (Television 3) "was derived from a transaction with another inmate that is not allowed" since there was no indication that Chapman had purchased Television 3.

[¶4]     The DOC filed a motion for summary judgment on all of Chapman's claims. After a hearing on June 9, 2014, the district court issued its *Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment*, in which it disposed of all but the due process claim based on the Fourteenth Amendment to the U.S. Constitution and the state law negligence claim. In denying summary judgment, the district court found that a narrow factual issue remained concerning Chapman's Fourteenth Amendment and state law negligence claims, ruling: "[The Department asserts] that [Chapman] did not timely file the necessary grievance regarding the television taken from him. However [Chapman] asserts that he did file a timely grievance."

[¶5]     After the district court issued its order on the DOC's motion for summary judgment, the DOC located the grievance Chapman filed regarding the second confiscated television. The Department acknowledged Chapman's grievance was timely filed and, with leave from the district court, filed additional arguments in support of summary judgment on Chapman's remaining claims. After review of the DOC's and Chapman's additional arguments, the district court, no longer finding genuine issues of material fact, granted the DOC's motion for summary judgment on the Fourteenth Amendment and state law negligence claims on December 15, 2014. Chapman timely filed his appeal of the *Order Granting Defendants' Second Motion for Summary Judgment*.

## STANDARD OF REVIEW

[¶6]     In our review of the district court's *Order Granting Defendants' Second Motion for Summary Judgment*,

6

[W]e employ the same standards and use the same materials as were employed and used by the trial court. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Summary judgment is appropriate only when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the trial court's ruling.

*Platt v. Creighton*, 2007 WY 18, ¶ 7, 150 P.3d 1194, 1198 (Wyo. 2007) (quoting *Black v. William Insulation, Co.*, 2006 WY 106, ¶ 7, 141 P.3d 123, 126–27 (Wyo. 2006)).

We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Lever v. Community First Bancshares, Inc.*, 989 P.2d 634, 637 (Wyo. 1999) (quoting *Duncan v. Town of Jackson*, 903 P.2d 548, 551 (Wyo. 1995)).

*Cosco v. Lampert*, 2010 WY 52, ¶ 8, 229 P.3d 962, 966 (Wyo. 2010) (quoting *Sheaffer v. State ex rel. Univ. of Wyo.*, 2009 WY 19, ¶¶ 12–13, 202 P.3d 1030, 1037 (Wyo. 2009)).

[¶7]   A different standard of review applies to Chapman's first argument that the district court should not have granted the DOC's request to file a second motion for summary judgment and will be addressed in the discussion below.

## DISCUSSION

**I.  Did the district court abuse its discretion by allowing the DOC to file a second motion for summary judgment following the partial denial of its first motion?**

[¶8]   In its June 26, 2014, order granting in part and denying in part the DOC's motion for summary judgment, the district court disposed of all but two of Chapman's claims: the Fourteenth Amendment due process claim, and the state law negligence claim.  After the district court issued its order, the DOC discovered additional material facts and made a request for additional argument on the issue of summary judgment.  The issue of

7

material fact that preserved Chapman's due process and state law negligence claims was whether he filed a grievance with respect to a television that was confiscated from him on June 18, 2012; Chapman claimed he did file a grievance and the DOC alleged that he did not file a grievance. After finding the grievance Chapman filed on July 3, 2012 concerning the June 18, 2012 confiscation of a television, and the associated documents, the DOC argued to the district court that no factual disputes remained and the matter may be determined as a matter of law. After a hearing, the district court found that "the development of changed evidence from the time that the court previously considered the motion on summary judgment is sufficient to permit a further motion for summary judgment."

[¶9] Chapman argues on appeal that the DOC should not have been given a second chance to revisit "the issues already addressed" by the district court. Chapman also objects to the fact that the district court ruled on the DOC's second motion for summary judgment without a hearing, arguing that this "denied Appellant the right to defend himself." We review the district court's decision to allow additional argument on summary judgment using an abuse of discretion standard:

> The abuse-of-discretion standard of review reaches the question of the reasonableness of the trial court's choice. *Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, 731 (Wyo. 2001). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously. *Id.*

> *Garnett v. State*, 2014 WY 80, ¶ 6, 327 P.3d 749, 751 (Wyo. 2014).

*Harris v. State*, 2015 WY 50, ¶ 8, 346 P.3d 944, 945 (Wyo. 2015) (quotation marks omitted). The purpose of a summary judgment proceeding is to determine whether any real issue exists requiring a full trial; it allows a court to dispose of issues in the early stages of litigation, thus permitting an end to unfounded claims and avoiding the expense to litigants and the judiciary of a full-fledged trial. *Greaser v. Williams*, 703 P.2d 327, 337 (Wyo. 1985), citing *Bluejacket v. Carney*, 550 P.2d 494, 496 (Wyo. 1976). Rule 56(a), W.R.C.P. states:

> (a) *For claimant.*—A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move

with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

[¶10] We have held that this language is broad enough to permit a party to file a second motion for summary judgment following the denial of his first motion for procedural reasons, and that this reading of the rule is consistent with the purpose of a summary judgment procedure. *Greaser*, 703 P.2d at 337. In this case, new evidence not previously considered was brought to the court's attention. Additional briefing in light of the new evidence was not prejudicial to Chapman. Chapman was also given an opportunity to provide additional briefing, and the district court considered all arguments prior to making a determination. We find and conclude that the district court did not abuse its discretion in allowing a second motion for summary judgment.

## II. Based on the undisputed facts of this case, did the pre- and postdeprivation remedy provided to Chapman satisfy his right to procedural due process?

[¶11] Chapman argues that his due process rights were violated when the DOC confiscated at least three televisions: Television 1 was confiscated on March 16, 2012, from another inmate's cell; this television is the only one for which Chapman had a receipt proving his ownership. Television 1 was found, however, in another inmate's cell in violation of WDOC Policy and Procedure #3.006. Television 1 was therefore considered contraband and was confiscated. Televisions 2 and 3 were confiscated from Chapman because he was not able to provide proof of ownership, again in violation of policy. The loss of this property, however, does not establish a due process claim. *See Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

### A. Adequate postdeprivation remedy.

[¶12] The main focus of Chapman's due process claim is on the confiscation of Television 1. Chapman argues that he was intentionally deprived of his property through an act unauthorized by prison policy (i.e. a state procedure). Specifically, Chapman alleges that when he returned to his cell after being in segregation in February 2012, he was told by Cpl. Dolan that her department did not have his television and that if they found it, they would return it to him. When the television was eventually found in another inmate's cell, it was confiscated as contraband since Chapman's number was on the television. Chapman alleges this form was not provided to him, nor was he told by prison officials that his television was found, and this is the basis of Chapman's argument. WDOC Inmate Communication and Grievance Policy #3.100 does, in fact, provide a procedure to follow and a remedy for inmates with any kind of complaint. Chapman, however, did not take advantage of this process made available to him, and therefore does not establish a due process claim.

9

[¶13]  In *Parratt v. Taylor,* a state prisoner sued prison officials under 42 U.S.C. § 1983 alleging that their negligent loss of a hobby kit he ordered from a mail-order catalog deprived him of property without due process of law, in violation of the Fourteenth Amendment.  In that case, the Supreme Court rejected the proposition that the Fourteenth Amendment right to due process "at a meaningful time and in a meaningful manner" always requires the State to provide a hearing prior to the initial deprivation of property. "This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available." *Parratt*, 451 U.S. at 540-41, 101 S.Ct. at 1915-16.  The Court in *Parratt* held that the Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy.  In other words, when there is an adequate and meaningful remedy available to an inmate deprived of his property, a due process claim is not established.

[¶14]  In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, the respondent/inmate alleged under 42 U.S.C. § 1983 that petitioner/prison employee intentionally destroyed certain of respondent's personal property during a shakedown search of the respondent's cell.  The Supreme Court extended their holding in *Parratt*:

> If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state postdeprivation remedies are available. Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson*, 468 U.S. at 533, 104 S.Ct. at 3204.  In this case, the confiscation of Television 1 was authorized and intentional pursuant to WDOC Policy #3.006.  Chapman argues DOC staff mixed up his property with another inmate's property; that when they found the television in another inmate's cell, they did not tell Chapman; and that they never gave him an opportunity to respond to the confiscation of the television.  Even if, however, the confiscation was unauthorized, Chapman did, in fact, have a meaningful postdeprivation remedy available to him in the form of the DOC's grievance procedure.

10

[¶15]   The DOC's *Inmate Communication and Grievance Procedure* provides inmates a meaningful postdeprivation remedy.   This policy establishes uniform guidelines and procedures for communication between DOC staff and inmates, and it establishes an administrative process to resolve inmate grievances without involvement of the courts. Among the list of issues that can be grieved using the Inmate Grievance Procedure is "[a] dispute concerning other incident(s) occurring within the correctional facility that directly and personally affected the inmate who is filing the grievance, including the loss or destruction of the inmate's approved personal property … ."   Among the available remedies is restoration or restitution for personal property.   The policy includes specific requirements for written responses to inmates who file grievances throughout the grievance process, and there are specific timelines that must be met throughout the process.  The procedure for filing grievances was the same for all televisions confiscated from Chapman:  An inmate must first attempt to resolve an issue informally through communication directly with the appropriate staff member; if that attempt is unsuccessful, the inmate may file a grievance form that is submitted to the grievance manager.  Inmates have the opportunity to appeal a grievance manager's decision to the Warden, as well as an opportunity to appeal a Warden's decision to the Director of the Wyoming Department of Corrections.  The Director's decision on an inmate grievance appeal is final, and is not subject to further review.  Finally, Section IV., A., 1. of Policy #3.100 states that the "Chief Executive Officers (CEOs) shall ensure that every inmate and every Department of Corrections employee has ready access to this policy and procedure regarding the inmate communication and grievance system."

[¶16]   It is clear that Chapman understood the grievance process as he did file grievances pursuant to WDOC policy after the confiscations of Televisions 2 and 3.   Chapman had an opportunity to file a grievance when he was released from segregation in February 2012, and was informed by Cpl. Dolan that property control did not have his television. Even though there was a process and remedy available to him, Chapman did not take advantage of it.   Chapman did not file a grievance; he therefore failed to exhaust the remedies available to him. The Prison Litigation Reform Act of 1995[1] requires inmates to exhaust administrative remedies available to them before they can file a civil rights action pursuant to 42 U.S.C. § 1983.  *See Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002).[2]

---

[1] Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–71, as amended, 42 U.S.C. § 1997e(a) (1994 ed., Supp. V).

[2]                 The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all actions ... brought with respect to prison conditions, whether under §

[¶17]  We agree with the district court that there was no procedural due process violation concerning the confiscation of Television 1 because Chapman had an adequate postdeprivation remedy through pursuing the inmate grievance procedure.

## B.  Adequate predeprivation remedy.

[¶18]  With regard to Television 2, Chapman in effect argues that he was deprived of his property without due process as the result of an established state procedure, specifically WDOC Policy and Procedure #3.013, *Searches*.  Certainly there are instances where "[p]ost-deprivation remedies alone are insufficient where the deprivation of property results from an established state procedure." *Griffin v. Hickenlooper*, 549 Fed. Appx. 823, 828 (10th Cir. 2013).  *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982).[3]  In *Griffin*, an inmate in the Colorado state prison system, complained that the corrections policy of disposition of inmate property was unconstitutional as it applied to him, based on the confiscation and disposal of his personal property.  *Id.*, 549 Fed. Appx. at 827-28.  Nevertheless, the Tenth Circuit Court of Appeals affirmed the district court's dismissal of this claim because the inmate was provided with both adequate predeprivation and postdeprivation remedies.  *Id.* at 828. *See also Jackson v. Central N.M. Corr. Facility*, No. 91-2234, 1992 WL 236921, *2 (10th Cir. Sept. 21, 1992) (unpublished opinion) ("any procedural due process to which Plaintiff was entitled was provided by the post-deprivation grievance procedure available within the prison system") and *Cosco*, 229 P.3d 962 (where this Court ruled that an inmate is not denied due process on a claim that he was wrongly deprived of his personal property where a grievance procedure affords the required process).

---

1983 or any other Federal law.  Thus federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

*Porter*, 534 U.S. at 524, 122 S.Ct. at 988 (internal citations and quotation marks omitted).

[3] Unlike the complainant in *Parratt*, the complainant in *Logan* was not challenging the state's error, but the "established state procedure" that destroyed his entitlement without according him proper procedural safeguards.  *Logan*, 455 U.S. 422, 102 S.Ct. 1148.  In *Logan*, Appellant was discharged from his job because a physical disability purportedly made it impossible for him to do his job.  The Supreme Court held that (1) the employee's right to use the Fair Employment Practices Act's adjudicatory procedures is a property right protected by the due process clause, (2) the employee had a right to adjudication by the state's Fair Employment Practices Commission, and (3) availability of a post-termination tort action pursuant to the state's claims act would not provide the employee due process as the claims act does not provide for reinstatement of an employee's job.  Thus, even a successful suit will not entirely vindicate an employee.

12

[¶19]  Chapman, like the inmate in the *Griffin* case, was also provided with adequate pre- and postdeprivation remedies through the WDOC's Inmate Communication and Grievance Policy #3.100.  When Television 2 was confiscated on June 18, 2012, Chapman filed a grievance on July 3, 2012.  Chapman's grievance was ultimately determined to be without merit and dismissed on August 13, 2012, in the final appeal process to Director Lampert.  Television 2 was not disposed of until November 2012, well after Chapman completed the grievance process.  Chapman completed the grievance process after Television 3 was confiscated with the same result; his appeal was determined to be without merit and dismissed on September 9, 2013.  "The fact that Plaintiff did not receive the result he desired from the grievance procedure does not mean that he was denied due process."  *Jackson*, 1992 WL 236921, at *2 (unpublished opinion).  Given the availability of both adequate predeprivation and postdeprivation remedies, Chapman suffered no deprivation of his procedural due process rights.  Summary judgment on this issue was appropriately granted.

**III.  Are the Government officials who are the subject of Chapman's claims entitled to qualified immunity?**

[¶20]  Chapman named three Department of Corrections employees, in their official and individual capacities, as Defendants in the district court, two of whom fall within the definition of a "government official:" Robert O. Lampert, Director of the Department of Corrections; and Steve Hargett, Warden at the Wyoming Medium Correctional Institution.  Although not considered a "government official," Cpl. Kelli Dolan, Property Officer at the Wyoming Medium Correctional Institution, is also a named Defendant.  Appellees argue Director Lampert and Warden Hargett have qualified immunity from civil damages as government officials.  Chapman argues that "[t]he Eleventh Amendment does not forbid suing state officials for damages in their individual capacities, and for declaratory or injunctive relief in their official capacities."  Aside from arguing simply that these Appellees "are not entitled to qualified immunity," Chapman does not provide a cogent argument in support of his contention.

[¶21]  We have said about the doctrine of qualified immunity:

> Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages when their conduct **"*does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"** *Park County v. Cooney*, 845 P.2d 346, 351 (Wyo. 1992), *cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, [818], 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)) (emphasis in original).  Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or

those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, [229], 112 S.Ct. 534, [537], 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986)).

*Abell v. Dewey*, 870 P.2d 363, 367 (Wyo. 1994).

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). There are two prongs to the qualified immunity analysis: A court must decide (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Id.*, 555 U.S. at 232, 129 S.Ct. at 815-16. The standard for a "clearly established right" is defined as follows:

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" [*Ashcroft v. al-Kidd*, 563 U.S. 731], 131 S.Ct. [2074, 2083, 179 L.Ed.2d 1149 (2011)] (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." 563 U.S.[ at ——, 131 S.Ct. at 2083]. This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Anderson*, *supra*, at 639, 107 S.Ct. 3034 (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

*Reichle v. Howards*, ___ U.S. ___, ___, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012).

14

[¶22] Certainly, Chapman's right to procedural due process either pre- or postdeprivation is clearly established. Chapman fails, however, to set out any facts establishing a violation of that right. Director Lampert's and Warden Hargett's only role was reviewing Chapman's grievances and making a determination based on the information presented to them pursuant to Policy #3.100. Where officials have not caused or personally participated in an alleged constitutional violation, they are properly dismissed as parties in an inmate's § 1983 civil action. *Pettigrew v. Zavaras*, 574 Fed. Appx. 801, 808 (10th Cir. 2014) (unpublished). Merely participating in the grievance procedure by denying the inmate's request does not constitute sufficient involvement to establish personal participation under 42 U.S.C. § 1983. *See Larson v. Meek*, 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished). The facts are undisputed and Chapman's allegations against Director Lampert and Warden Hargett are insufficient to state a cause of action. Summary judgment was therefore appropriate.

[¶23] Again, using the analysis for qualified immunity above, Chapman fails to show there is clearly established law that would put Cpl. Dolan on notice that her actions would violate Chapman's procedural due process rights. As the district court noted in its summary judgment order, the property policy in place at the Wyoming State Penitentiary and the Wyoming Medium Correctional Institution is the type of administrative policy that courts have "accorded wide-ranging deference" to prison officials, so as to "preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Courts will give prison officials deference in policy matters regarding the safety and security of the prisons. *See also Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974).

[¶24] Cpl. Kelli Dolan is not considered a government official, yet Chapman names her in her official and individual capacity in his civil action. Although Chapman does not explicitly make a *respondeat superior* argument, Director Lampert and Warden Hargett are Cpl. Dolan's superiors, so we will address this issue simply to say "there is no concept of supervisor strict liability under section 1983." *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984). *See also Schultz v. Baumgart*, 738 F.2d 231, 238–39 (7th Cir. 1984); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *cf. Monell v. New York City Department of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978).

> Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971). Pursuant to this requirement, courts have rejected § 1983 claims based upon *respondeat superior* theory of liability. *See Polk Co. v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Iskander v.*

15

*Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (cases cited therein). Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

*Wolf-Lillie*, 699 F.2d at 869 (emphasis in original). There are no facts or evidence to support a claim based on *respondeat superior*. We hold these named Appellees are entitled to qualified immunity and that summary judgment was appropriate.

**IV.  Did Chapman comply with the jurisdictional requirements of the Wyoming Governmental Claims Act, Wyo. Stat. Ann. § 1-39-113?**

[¶25]  Chapman's state law negligence claim is against a governmental entity, and "[t]his Court has long held that a party seeking to bring an action against a governmental entity must first comply with the constitutional and statutory requirements by presenting a notice of claim to the entity." *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 18, 331 P.3d 1174, 1178 (Wyo. 2014) citing *Brown v. City of Casper*, 2011 WY 35, ¶ 19, 248 P.3d 1136, 1141 (Wyo. 2011). Wyo. Stat. Ann. § 1-39-113(d) reads:

> (d)  In any action under this act, the complaint shall state:
>
> > (i) That the claim required under subsection (c) of this section was filed in accordance with this section;
> >
> > (ii) The date the claim under subsection (c) of this section was filed;
> >
> > (iii) That the claim was in compliance with the signature and certification requirements of article 16, section 7 of the Wyoming Constitution.

[¶26]  While failure to file a claim strictly complying with the WGCA does not deprive a district court of subject matter jurisdiction, the WGCA's requirements are substantive and a plaintiff's failure to strictly comply may require dismissal of his claim. *See Harmon*, ¶ 49, 331 P.3d at 1188.[4]

---

[4] It is important to note here that even though failure to strictly comply with the requirements of the WGCA may require dismissal of a state law claim, that failure would not bar a § 1983 claim:

> [T]he Supreme Court has stated that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 … cannot be immunized by state law." *Howlett ex rel. Howlett v. Rose*, 496 U.S.

[¶27] The parties do not dispute that Chapman failed to submit a notice of claim as required by the WGCA. Chapman's state law negligence claim was therefore appropriately dismissed in summary judgment.

## V. Does the doctrine of sovereign immunity bar Chapman's claims against the State of Wyoming, two state agencies, and three state officials?

[¶28] Suits against state officials in their official capacity should be treated as suits against the State. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Chapman brought suit against the Wyoming Department of Corrections, the Wyoming Medium Correctional Institution, and against Director Lampert, Warden Hargett, and Cpl. Dolan in their official capacities as well as individually. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). As such, there is no cause of action for damages under 42 U.S.C. § 1983. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

[¶29] Unless a state consents to a suit brought by her own citizens or citizens of another state, the state is entitled to Eleventh Amendment immunity. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). The Wyoming Department of Corrections, the Wyoming State Penitentiary, and the Wyoming Medium Correctional Institution are all part of the State of Wyoming. Wyo. Stat. Ann. §§ 9-2-2012 and 25-2-104. The State of Wyoming has not waived its Eleventh Amendment immunity. Chapman, therefore, has no claim for damages against Appellees in their official capacities, and summary judgment in Defendants'/Appellees' favor was appropriate.

---

356, [376], 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (quoting *Martinez v. California*, 444 U.S. 277, 284 n.8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)). The Tenth Circuit has very plainly held this statement to mean that "[a] § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act." *Tiemann v. Tul–Ctr., Inc.*, 18 F.3d 851, 853 (10th Cir. 1994); *see also Phillips v. Wiseman*, 857 P.2d 50, 52 (Okla. 1993) ("[T]he [Oklahoma] Governmental Tort Claims Act and 42 U.S.C. § 1983 provide a 'double-barreled system,' and ... escaping liability under one does not necessarily mean that a party also escapes liability under the other."). Indeed, a cursory review of prior rulings from this Court would have demonstrated to OMUSA that Romero's § 1983 was not foreclosed under the GTCA. *See, e.g., Poore v. Glanz*, 11–CV–0797–[CVE]–TLW, 2012 WL 1536933 (N.D. Okla. Apr. 30, 2012) ("plaintiff's lack of compliance with the notice requirements of the GTCA is not a defense to a § 1983 claim.").

*Romero v. City of Miami*, 8 F. Supp. 3d 1321, 1327-28 (N.D. Okla. 2014).

## *CONCLUSION*

[¶30]  The district court's summary judgment order which is the subject of this appeal is affirmed in all respects.